SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

———————————————————————X

OWOLABI SALIS

                              Plaintiff,

                                                      SUMMONS
                                                      INDEX NO:_____

Against

CITY OF NEW YORK

                              Defendant.

————————————————————————.X


PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

The plaintiff designates Kings County as the place of trial. The plaintiff resides in 1179 Eastern Parkway Brooklyn N.Y. 11213.

Dated: __27th__ day of __May__ 2017


                                                      _Salis_
                                                      Owolabi Salis (Pro Se)
                                                      1179 Eastern Parkway
                                                      Brooklyn, NY 11213
                                                      9174030566

TO:

City of New York,
Attn: Corporation Counsel,
100 Church St., 5 Fl.,
New York, NY 10007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
_____X

OWOLABI SALIS
                              Plaintiff,
                                                          COMPLAINT
                                                          INDEX NO:_____

Against

CITY OF NEW YORK
                              Defendant.
_____X

## FIRST CAUSE OF ACTION-MALICIOUS PROSECUTION

1. The plaintiff, was at all times, a citizen and resident of the State of New York and currently resides in Kings County, New York State.

2. The plaintiff, was at all times, a licensed attorney in the State of New York and a sustaining member of the New York Bar, a member of American Immigration Lawyers Association and member of Amnesty International. The plaintiff is a professional of about 30 years who is also a Certified Public Accountant, CPA, a series 6 and 63 holder and an advanced degree holder

3. The Defendant City of New York  (which may hereinafter referred to as "the city") was as at all relevant times, a municipal corporate subdivision of the State of New York.

4. Upon information and belief,  the defendant has many attorneys, elected and unelected, contractual and non contractual working under it, responsible for the initiation and prosecution of criminal cases under the jurisdiction of the city.

5. Upon information and belief, one of such attorney was the New York County district attorney who at all relevant times was and is an elected officer of New York County which is one of the constituent counties of the city.

6. Upon information and belief,  the said New York district attorney is a local officer under s.2 of the New York Public Officers Law and is funded out of the city's budget.

7. Section  2 of the New York Public Officers Law defines the  term "state officer" includes every officer for whom all the electors of the state are entitled to vote, members of the legislature, justices of the supreme court, regents of the university, and every officer, appointed by one or more state officers, or by the legislature, and authorized to exercise his official functions throughout the entire state, or without limitation to any political subdivision of the state, except United States senators, members of congress, and electors for president and vice-president of the United States. The term "local officer" includes every other officer who is elected by the electors of a portion only of the state, every officer of a political

subdivision or municipal corporation of the state, and every officer limited in the execution of his official functions to a portion only of the state. The office of a state officer is a state office. The office of a local officer is a local office.

8.  Upon information and belief, there are five counties under the New York City of which the New York County is a constituent and the city, by law or design, assume liability for torts committed by county officers and employees including the county District Attorneys and their assistants.

9.  The plaintiff was indicted by the defendant and was charged with two counts of Scheme to Defraud in the First Degree P.L. § 190.65(1)(a) and P.L. § 190.65(1)(b), nine counts of Grand Larceny in the Third Degree, P.L. § 155.35(1), one count of Attempted Grand Larceny in the Third Degree P.L. § 110/155.35(1), and eight counts of Falsifying Business Records in the First Degree, P.L. § 175.10.

10. Upon information and belief, the defendant committed various misconduct against the plaintiff, acted against rules and regulations, violated due process and abuse the civil and constitutionally rights of the Plaintiff, pursued an improper purpose against the plaintiff, manipulated and misled justice thereby leading the plaintiff to be indicted, arrested on false affidavit and later tried on false witnesses, manipulated evidence and improper procedures.

11. The plaintiff was discharged and acquitted of the charges on or about March 24, 2016 after trial.

12. Written notice of the claim was served on the defendant within 90 days after the plaintiff's claim arose, pursuant to General Municipal Law 50-e. More than 30 days have elapsed since the Notice of Claim was filed and the matter has not been adjusted. Less than one year 90 days has elapsed since the happening of the events upon which the claim is based.

13. The amount of damages sought in this action exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

14. Upon information and belief, a former U.S. Attorney General Robert Jackson stated that "The prosecutor has more control over life, liberty, and reputation than any other person in America. His discretion is tremendous....While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst".

35. Upon information and belief, the US Supreme Court has emphasized a series of factors to be evaluated in determining whether prosecutorial misconduct so infected the trial as to amount to violation of due process: (1) whether the comments were isolated or pervasive, (2) whether they were deliberately or accidentally placed before the jury, (3) the degree to which the remarks had a tendency to mislead and prejudice the defendant, (4) whether the prosecutor manipulated or misstated the evidence, (5) the strength of the overall proof establishing guilt, (6) whether the remarks were objected to by counsel, and (7) whether a curative instruction was given by the court.

36. Upon information and belief, there was violation of due process in the prosecution of the plaintiff as certain matters were deliberately placed before the jury and evidence were manipulated or misstated

37. Upon information and belief, the defendant displayed unilateral, unchecked ability to destroy the live of the plaintiff during the prosecution of the plaintiff.

38. Upon information and belief, Alex Kozinski, Chief Judge of the Ninth Circuit Court of Appeals, stated "There is an epidemic of Brady violations abroad in the land."

39. Upon information and belief a prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger v United States, 295 US 78, 88 (1935). Upon information and belief, this duty was breached in the prosecution of the defendant.

40. Upon information and belief, "The prosecutor . . . enters a courtroom to speak for the People and not just some of the People. The prosecutor speaks not solely for the victim, or the police, or those who support them, but for all the People. That body of 'the People' includes the defendant and his family and those who care about him." Lindsey v State, 725 P2d 649 (WY 1986) (quoting Commentary On Prosecutorial Ethics, 13 Hastings Const LQ 537-539 [1986]). Upon information and belief, this duty was breached in the prosecution of the defendant.

41. Upon information and belief, the Center for Prosecutor Integrity stated that prosecutorial misconduct can assume many forms, including:

   a. Charging a suspect with more offenses than is warranted

   b. Withholding or delaying the release of exculpatory evidence

   c. Deliberately mishandling, mistreating, or destroying evidence

   d. Allowing witnesses they know or should know are not truthful to testify

   e. Pressuring defense witnesses not to testify

   f. Relying on fraudulent forensic experts

   g. During plea negotiations, overstating the strength of the evidence

   h. Making statements to the media that are designed to arouse public indignation

   i. Making improper or misleading statements to the jury

   j. Failing to report prosecutorial misconduct when it is discovered

   k. Commenting on the defendant's failure to take stand or make a statement to the police

   l. Denigrating the defendant, the defense or the defense counsel

   m. Suggesting the defense counsel lacks confidence in the defendant's innocence

   n. Arguing matters not supported by evidence

    o.  Equating Not Guilty verdict to a complaint that the witnesses lied or committed perjury

    p.  Argument which urged the jury to decide case based on prosecutor's own veracity, integrity, honesty, reputation and knowledge of facts

    q.  Upon information and belief, many of the above misconduct were committed in the prosecution of the defendant.

42. Upon information and belief,  the defendant violated due process in the pursuit of an improper purpose, placed certain matters deliberately before the jury, manipulated or misstated evidence or facts and misrepresented in the indictment statement by stating that "the plaintiff  made material misrepresentations to his immigrant clients and told them that they qualified for lawful permanent residence (green cards) and other immigration benefits when they did not.  He obtained work permits for these immigrants and misrepresented to them the facts surrounding the manner in which the cards were acquired and the length for which they would be valid.  Based on Salis' actions, numerous immigrants were led to falsely believe that they qualified for benefits when they did not.  After the work permits were sent to Salis' office rather than the immigrants' homes, he then demanded $4500 on top of the immigration filing fees, file opening fees, biometrics letter fees and consultation fees they already paid.  To facilitate his scheme, and unbeknownst to his victims, Salis used the I360 form, which is reserved for special immigrants including juveniles, Iraqi and Afghani translators for the U.S. military and victims of domestic violence including spousal, child and elder abuse.  On the I360, Salis would write in a non-recognized eligibility category such as "Dream Act" or "Self-Petitioning Parent of a US Citizen Child."  For those with U.S. born children, he would write in the U.S. born child's name under the section where the U.S. citizen abuser's name and information was required, even though there were no allegations of elder abuse.  Oftentimes, these children were toddlers.  Along with the I360, Salis would also file an I485 form for an adjustment of status and an I765 form for the employment authorization. As is the practice of the United States Department of Homeland Security's Citizenship and Immigration Services with any pending adjustment of status application, while the I360s and I485s were being adjudicated, temporary employment authorization cards were issued solely on the basis of an existing pending adjustment of status application. Salis would then tell immigrants that they were approved and to come to his office to pick up their work permits which would only be released upon their payment of $4500.  What the immigrants were not told was that these work permits were temporary and were based on a fraudulent underlying adjustment of status petition. The I360s and I485s were all subsequently denied, and the denial letters were sent to the Salis Law Office.  Immigrants were not told they were denied until they came back the following year to renew their work permits which was sometimes months after the denial letter was initially sent, some immigrants were never told they were denied and instead new sets of fraudulent forms were filed on their behalf".

43. Upon information and belief, the defendant obtained an indictment against the plaintiff using about 10 complainants. Complainants 1 and 2 are gay clients of the plaintiff and graduates with long residence in US and originally from Jamaica. These complainant expressed fear of danger if they have to return to their home country because of increase

attack on gays in Jamaica. Complaint 3 is a long term resident of the US who expressed fear of danger going back to his country and complainants 4 to 10 are long term residents of the US and parents of US citizens.

44. Upon information and belief, the Department of Homeland Security and the Department of Justice mainly control the grant of immigration benefits and both have statutory and discretionary or administrative powers to grant such benefits.

45. Upon information and belief, the defendant knew or ought to have known of the statutory and the discretionary or administrative powers of the Department of Justice and the Department of Homeland Security to grant immigration benefits to immigrants with vested public interest like parents of US Citizens, those pursuing education in the US, those with serious medical conditions and those whose life is threatened back in their country among others but then the defendant chose to prosecute the plaintiff for an improper purpose

46. Upon information and belief, the report is written by an agent assigned to the defendant. The agent also obtained a search warrant stating that students are not qualified for administrative relief which is not true.

47. There is an improper purpose to seize the plaintiff property and a civil case was filed in federal court using the same report of the agent but not verified by the agent but instead was verified by a local police officer.

48. Upon information and belief, the Governments vested interests in US Citizens Children is protected by Privileges and Immunities Clause, Due Process Clause and Equal Protection Clause of the US Constitution (14th Amendment).

49. Upon information and belief, the US Supreme Court has decided in so many cases that the rights of the parents over their US Citizen child is more than property rights that needs to be protected absent danger to the child summing up that parents of US citizens need to be supported to carry out their parental obligations of custody, care and support. "The rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and rights far more precious than property rights. It is cardinal that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations ......" The rights to conceive and to raise one's children have been deemed "basic civil rights of man," Skinner v. Oklahoma , 316 U.S. 535 , 541 (1942) , and " rights far more precious . . . than property rights ," May v. Anderson , 345 U.S. 528 , 533. See also Stanley v. Ill., 405 U.S. 645, Troxel v. Granville, 530 U.S. 57 and Santosky v. Kramer, 455 U.S. 74

50. Upon information and belief, in immigration benefits application, it is the duty of the government to take decision and the decision is either "approved or denied" and the government have administrative or discretionary powers including determining whether to approve temporary relief when an application is pending.

51. Upon information and belief, an immigrant or his or her attorney can apply for administrative or discretionary opportunities, argue for change in law, or appeal any denial, render an opposing argument in a case and such action may not be criminalized unless for an improper purpose.

52. Upon information and belief, the Department of Homeland Security and Department of Justice have discretion whether to accept or reject an application, whether to approve or

deny an application and whether to give temporary relief or not when an application is pending, among others and such decisions cannot be appealed.

53. Upon information and belief, the defendant knows or ought to have known of the law, regulations and or courts decisions that when government take discretionary decisions on discretionary applications, such decisions cannot be questioned or appealed or reviewed.

54. Upon information and belief, the defendant knows or ought to have known that government administrative or discretionary relief are applied on a case by case and denial is not appealable and if denied, you can only reapply.

55. In the statement of indictment, the defendant conceded that the complainants obtained work permits which contradicted a sentence in the indictment which stated that they were not qualified because if they are not qualified for work permit which is an immigration benefit why would the government approve.

56. The defendant did not allege in the statement of indictment that the complainants or the plaintiff submitted fraudulent documents to obtain the work permit, all the complainants did was to execute affidavits in their handwriting that they needed work permit, that they were parents of US citizens if one and that they are facing hardship for not being able to work.

57. Work permits are like diver license or passport card that have expiration date boldly written on it and of which the complainants have opportunity to examine before paying the plaintiff. The statement that the complainants did not know the expiration period was designed for an improper purpose.

58. The complainants were approved for work permits which is an immigration benefits and no complainant nor the plaintiff submitted fraudulent documents to get the permit. Therefore, any allegation that they did not qualified should have been directed to the government adjudicators who approved the work permits except the prosecution is for an improper purpose.

59. The defendant knows or ought to have known that it is not against the norm in immigration practice for attorney to receive letters and approvals on behalf of their clients but the defendant have included a statement in the indictment against this practice for an improper purpose. G-28 form (Notice of Entry of Appearance) stated that an immigrant can request that work permit or green card approvals be sent to their attorney of record. Using our office address for approvals also help us secure our attorney fees.

60. Upon information and belief, the defendant knows or ought to have known that the complainants as with other clients whose case are before Homeland security paid the attorney fees on approval of the work permit and only if they are picking it up to use. If the application is denied, there will be no payment. For an improper purpose, the statement of indictment deliberately did not state the amount paid for consultation (which is $85 and last sometimes for 2 to 5 years), filing fees (which is government fees but painted as fees paid to the defendant), file opening and secretarial fees ( which was 250+50 to the forms preparer etc) and also did not state the voluminous and complexity involved in the application process.

61. Upon information and belief, the defendant knows or ought to have known that some of the complainants came to renew their work permit and actually knew they were applying for work permit and if there was a dispute as to what they are paying for, then, they do

not have to pay because payment was done after the approval and when they are picking up

62. For an improper reason, the defendant tried to limit the purpose and misstated the facts of immigration benefit form I360 which was one of forms used to petition for the complainants. The statement of indictment deliberately omitted an open or blank section titled section "m please explain"- a catch all section to explain the immigration benefits requested including discretionary relief. After the trial of the plaintiff, the said form I360 was redesigned.

63. Under section m, it is disclosed to the government that the complainants are applying for administrative relief work permit and submit the form with

    a. Handwritten affidavits of complainants stating that they needed work permits and not green card. The affidavit is notarized outside our office.

    b. Proof of identity and nationality like passport and birth certificate

    c. If parents of US citizens, Proof of Custody and Care for the US Citizen child like school and medical records. No parent complainants submitted proof of abuse of their children like police report, medical reports, photos of bruises and all that but for an improper purpose the defendant put up the argument of elder abuse and manipulated the jury in that direction.

    d. Good faith argument from the law office and so on.

    e. No complainant submitted fraudulent documents.

    f. The above are the basic information needed under the Standard Operating Procedure for Handling Deferred Action Request released by the Department of Homeland Security.

    g. Upon information and belief, the defendant knew all these but choose to manipulate the system to indict the plaintiff for an improper purpose.

64. Upon information and belief, the defendant knows or ought to have known that  the United States Citizenship and Immigration Service (USCIS) Ombudsman has laid complaints of lack of transparency and inconsistencies among agencies of staff in the implementation of the deferred action request. The Ombudsman reported stakeholders lack clear, consistent information regarding requirements for submitting a deferred action request and what to expect following submission of the request. The USCIS Ombudsman further stated there is no formal national procedure for handling deferred action requests.

65. Upon information and belief, the defendant was informed by USCIS officer at the indictment hearing that there is no consistency in the request for deferred action or administrative or discretionary  relief but chose to manipulate the hearing against the plaintiff.

66. Upon information and belief,  the defendant knows or ought to have known of the emotional joy and love some parents have for their children including times and devotion together like attendance at parks, dinners, picnic, holiday travels, movies, sightseeing, dances and parties, games, sports, hunting, cruises, walking, nursing, celebrations, birthdays, anniversaries, and so on.

67. Upon information and belief,  the defendant knows or ought to have known of responsibilities to the child that the parent is morally obligated to meet include nursing, schooling, feeding, day care, health, safety or danger avoidance, housing and emotional

development of the child among others. To many parents, meeting these responsibilities create financial and general hardships.

68. Upon information and belief, the defendant knows or ought to have known of dangers and damages the parents are exposed to in meeting these responsibilities including support and custody lawsuits, arrests or threat of arrests by Police or Administration of Children Services for neglect, abandonment etc, Begging, Sleeplessness, Depression, Borrowing, Temptations to Commit crimes like prostitution, shoplifting, drug dealings, kidnapping, slavery, suicide, assault, violent crimes, domestic violence and so on

69. Upon information and belief, the defendant knows or ought to have known of common problems that impacts on parents serious emotional distress or cruelty including psycho-social problems, threats of arrest, reputation damage because their child is caught selling drugs, child abscond from home, child caught for rape, burglary, stolen goods and other various crimes bringing sleeplessness, financial deprivation, psycho-social problems and so on for the parents particularly mothers.

70. Upon information and belief, the defendant knows or ought to have known of New York penal law affecting the relationship between parents and their unemancipated children including the following:

    a. § 260.00 Abandonment of a child. A person is guilty of abandonment of a child when, being a parent, guardian or other person legally charged with the care or custody of a child less than fourteen years old, he or she deserts such child in any place with intent to wholly abandon such child. Abandonment of a child is a class E felony.

    b. § 260.05 Non-support of a child in the second degree. A person is guilty of non-support of a child when: 1. being a parent, guardian or other person legally charged with the care or custody of a child less than sixteen years old, he or she fails or refuses without lawful excuse to provide support for such child when he or she is able to do so, or becomes unable to do so, when, though employable, he or she voluntarily terminates his or her employment, voluntarily reduces his or her earning capacity, or fails to diligently seek employment; or 2. being a parent, guardian or other person obligated to make child support payments by an order of child support entered by a court of competent jurisdiction for a child less than eighteen years old, he or she knowingly fails or refuses without lawful excuse to provide support for such child when he or she is able to do so, or becomes unable to do so, when, though employable, he or she voluntarily terminates his or her employment, voluntarily reduces his or her earning capacity, or fails to diligently seek employment. Non-support of a child in the second degree is a class A misdemeanor.

    c. § 260.06 Non-support of a child in the first degree. Same as above 2. he or she has previously been convicted in the preceding five years of a crime defined in

section 260.05 of this article or a crime defined by the provisions of this section. Non-support of a child in the first degree is a class E felony.

d.  § 260.10 Endangering the welfare of a child. A person is guilty of endangering the welfare of a child when: 1. He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health; or 2. Being a parent, guardian or other person legally charged with the care or custody of a child less than eighteen years old, he or she fails or refuses to exercise reasonable diligence in the control of such child to prevent him or her from becoming an "abused child," a "neglected child," a "juvenile delinquent" or a "person in need of supervision," as those terms are defined in articles ten, three and seven of the family court act. Endangering the welfare of a child is a class A misdemeanor.

e.  § 260.20 Unlawfully dealing with a child in the first degree. A person is guilty of unlawfully dealing with a child in the first degree when: 1. He knowingly permits a child less than eighteen years old to enter or remain in or upon a place, premises or establishment where sexual activity as defined by article one hundred thirty, two hundred thirty or two hundred sixty-three of this chapter or activity involving controlled substances as defined by article two hundred twenty of this chapter or involving marihuana as defined by article two hundred twenty-one of this chapter is maintained or conducted, and he knows or has reason to know that such activity is being maintained or conducted; or 2. He gives or sells or causes to be given or sold any alcoholic beverage, as defined by section three of the alcoholic beverage control law, to a person less than twenty-one years old; except that this subdivision does not apply to the parent or guardian of such a person or to a person who gives or causes to be given any such alcoholic beverage to a person under the age of twenty-one years, who is a student in a curriculum licensed or registered by the state education department, where the tasting or imbibing of alcoholic beverages is required in courses that are part of the required curriculum, provided such alcoholic beverages are given only for instructional purposes during classes conducted pursuant to such curriculum. It is no defense to a prosecution pursuant to subdivision two of this section that the child acted as the agent or representative of another person or that the defendant dealt with the child as such. It is an affirmative defense to a prosecution pursuant to subdivision two of this section that the defendant who sold, caused to be sold or attempted to sell such alcoholic beverage to a person less than twenty-one years old, had not been, at the time of such sale or attempted sale, convicted of a violation of this section or section 260.21 of this article within the preceding five years, and

such defendant, subsequent to the commencement of the present prosecution, has completed an alcohol training awareness program established pursuant to subdivision twelve of section seventeen of the alcoholic beverage control law. A defendant otherwise qualifying pursuant to this paragraph may request and shall be afforded a reasonable adjournment of the proceedings to enable him or her to complete such alcohol training awareness program. Unlawfully dealing with a child in the first degree is a class A misdemeanor.

f.   § 260.21 Unlawfully dealing with a child in the second degree. A person is guilty of unlawfully dealing with a child in the second degree when:1. Being an owner, lessee, manager or employee of a place where alcoholic beverages are sold or given away, he permits a child less than sixteen years old to enter or remain in such place unless: (a) The child is accompanied by his parent, guardian or an adult authorized by a parent or guardian; or (b) The entertainment or activity is being conducted for the benefit or under the auspices of a non-profit school, church or other educational or religious institution; or (c) Otherwise permitted by law to do so; or (d) The establishment is closed to the public for a specified period of time to conduct an activity or entertainment, during which the child is in or remains in such establishment, and no alcoholic beverages are sold, served, given away or consumed at such establishment during such period. The state liquor authority shall be notified in writing by the licensee of such establishment, of the intended closing of such establishment, to conduct any such activity or entertainment, not less than ten days prior to any such closing; or 2. He marks the body of a child less than eighteen years old with indelible ink or pigments by means of tattooing; or 3. He sells or causes to be sold tobacco in any form to a child less than eighteen years old. It is no defense to a prosecution pursuant to subdivision three of this section that the child acted as the agent or representative of another person or that the defendant dealt with the child as such. Unlawfully dealing with a child in the second degree is a class B misdemeanor.

g.   § 263.05 Use of a child in a sexual performance. A person is guilty of the use of a child in a sexual performance if knowing the character and content thereof he employs, authorizes or induces a child less than seventeen years of age to engage in a sexual performance or being a parent, legal guardian or custodian of such child, he consents to the participation by such child in a sexual performance.Use of a child in a sexual performance is a class C felony.

h.   § 263.10 Promoting an obscene sexual performance by a child. A person is guilty of promoting an obscene sexual performance by a child when, knowing the character and content thereof, he produces, directs or promotes any obscene performance which includes sexual conduct by a child less than seventeen years

of age.Promoting an obscene sexual performance by a child is a class D felony.

i.  § 263.11 Possessing an obscene sexual performance by a child. A person is guilty of possessing an obscene sexual performance by a child when, knowing the character and content thereof, he knowingly has in his possession or control, or knowingly accesses with intent to view, any obscene performance which includes sexual conduct by a child less than sixteen years of age.Possessing an obscene sexual performance by a child is a class E felony.

j.  § 263.15 Promoting a sexual performance by a child. A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a child less than seventeen years of age.Promoting a sexual performance by a child is a class D felony.

k.  § 263.16 Possessing a sexual performance by a child. A person is guilty of possessing a sexual performance by a child when, knowing the character and content thereof, he knowingly has in his possession or control, or knowingly accesses with intent to view, any performance which includes sexual conduct by a child less than sixteen years of age.Possessing a sexual performance by a child is a class E felony.

l.  § 263.30 Facilitating a sexual performance by a child with a controlled substance or alcohol. 1. A person is guilty of facilitating a sexual performance by a child with a controlled substance or alcohol when he or she: (a) (i) knowingly and unlawfully possesses a controlled substance as defined in section thirty-three hundred six of the public health law or any controlled substance that requires a prescription to obtain, (ii) administers that substance to a person under the age of seventeen without such person's consent, (iii) intends to commit against such person conduct constituting a felony as defined in section 263.05, 263.10, or 263.15 of this article, and (iv) does so commit or attempt to commit such conduct against such person; or (b) (i) administers alcohol to a person under the age of seventeen without such person's consent, (ii) intends to commit against such person conduct constituting a felony defined in section 263.05, 263.10, or 263.15 of this article, and (iii) does so commit or attempt to commit such conduct against such person. Facilitating a sexual performance by a child with a controlled substance or alcohol is a class B felony."

71. Upon information and belief, the defendant knew or ought to have known that testimony include evidence in support of a fact or statement and that false statements that appear in an application, even if the application bears a statement of oath, do not constitute testimony within the meaning of the immigration adjudication See Matter of L-D-E- 8

I&N Dec. 399 (BIA 1959). See also Supreme court decision in Kungys v United States 485 u.s. 759, 780-81 (1988).

72. Upon information and belief, the defendant continued to prosecute the plaintiff having become aware that the plaintiff is relying on official statement of law, memos, rules and regulations.

73. Upon information and belief, past DHS general counsels and law professors and INA § 242(g) recognizes the executive branch's legal authority to exercise prosecutorial discretion and another statutory provision, INA § 274A(h)(3), recognizes executive branch authority to authorize employment for noncitizens who do not otherwise receive it automatically by virtue of their particular immigration status.

74. Upon information and belief, the defendant knows or ought to have known that you cannot appeal a discretion. See 8 USC 1252(g). AAADC 525 US. Once a discretion is denied, the only hope is to represent your case anew or represent to the discretion holder to reconsider.

75. Upon information and belief, the defendant knew or ought to have known the USCIS Standard Operating Procedure (SOP) on Deferred Action which stated you cannot appeal, if you are denied, the only option is to re-present in quote "There is no appeal to a request that is not granted, but the requestor can submit additional evidence to request reconsideration of the determination or a new request for deferred action can be submitted"

76. Upon information and belief the defendant knew or ought to have known that the USCIS Ombudsman reported stakeholders lack clear, consistent information regarding requirements for submitting a deferred action request and what to expect following submission of the request. The USCIS Ombudsman stated there is no formal national procedure for handling deferred action requests. The USCIS Ombudsman further stated that in "Individual Deferred Action Requests and USCIS Processing", the USCIS processes two types of deferred action requests: 1) those submitted by individuals who qualify based on a USCIS decision to use deferred action as a pre-adjudication form of temporary relief for those who have filed certain petitions or applications (e.g., widows of U.S. citizens, qualified victims of a crime or abuse); and 2) those submitted by individuals in exigent circumstances (e.g., extreme medical cases, victims of the September 11th terrorist attacks), who may, or may not, have an application for immigration benefits pending.

77. Upon information and belief the defendant knew or ought to have known that the work permits obtained by the complainants have value or benefits to them and some of them confirmed at the trial the value gained. Among the benefits are:

   a. Integration into US system by obtaining social security number if none before and state identification. The work permit enable them to obtain these two important documents.

    b.  Ability to open bank account and build credit.

    c.  Ability to save for pensions, social security, medicare and set up family trust.

    d.  Ability to sign on for life utilities using their social security number and state identification.

    e.  Ability to work for others or start own business

    f.  Ability to earn Earned Income Credits (EIC) if low income parents and report taxes properly. Some parents got EIC as high as $15000 yearly.

    g.  Ability to buy home and car for self or family.

    h.  Ability to improve their family financial health and balance sheet and so on.

78. Upon information and belief,  the defendant knew or ought to have known that there are so many immigrant parents while not able to work and at the same time facing the challenge of maintaining their children went into crime, got arrested and deported making their children ending up in foster homes or badly damaged and that getting them work permit can avoid these problems.

79. Upon information and belief,  the defendant knew or ought to have known that all human beings have fundamental right to living; which involves working, that employers are mandated to verify that their employees have the right to work  and that many immigrants work under fake identity.

80. Upon information and belief,  the defendant knew or ought to have known that failure to prepare an I-9 is one of the most serious violations because it completely subverts the purpose of the employment verification requirements. See United States v. M & D Masonry, Inc., 10 OCAHO no. 1211, 11 (2014); see also United States v. Skydive Acad. of Haw., 6 OCAHO no. 848, 235, 248-49 (1996).

81. The Plaintiff little effort in getting work permit for the complainants which they use to work legally,  obtain social security number and state identification or driver's license and integrate into the US system made a lot of difference between success or failure in their American dream.

82. Upon information and belief, the defendant knew or should have known the following key points but chose to prosecute the plaintiff for an improper purpose:

    a.  That complainants only paid attorney fees on approval of the work permit and when they picked up their work cards.

    b.  That plaintiff was not paid by any of the complainant for green card which prosecutor allegedly stated that defendant promised them. That no complainant paid defendant attorney fees for green card.

    c.  That no complainant paid the attorney fees for denial. If denied, no fees.

    d.  That the complainants paid for work permits on approval, if there is no approval, no attorney fees. They knew they are paying for work permit. The plaintiff believed the complainants were recruited to complain.

e. That when the complainants picked the work permit, they have the opportunity to examine it before paying for it. They knew the period which is embossed on the face of the card.

f. That if there is a dispute on the period or that it is not work permit that was being agreed, then, they do not have to pay for the work permit. It is not compulsory they should pay.

g. That the cards are not fake cards; they are originals administratively approved by the government.

h. That United States Citizenship and Immigration Service (USCIS) that approved the work permits have integrity and competent staff and before approving have examined the applications.

i. That no fraudulent document or false statements was submitted to the USCIS

j. That in immigration practice, it is the duty of the government to decide whether to approve or not. The government adjudicators are skilled and well trained with a lot of discretionary power.

k. That the defendant has no right to challenge the discretionary decision of the approving government officials.

l. That the duty of the lawyer is to advise on the laws, rules, regulations, procedures, advantages and disadvantages. And that the defendant did not do more than that.

m. That the duty of the client is to decide whether or not to apply, and if applying to bring facts to support his/her case.

83. The defendant knew or ought to have known :

a. That when a client case is denied does not mean the attorney is a criminal (more so that the attorney is not being paid for denial) otherwise all lawyers are criminals because they all have denied cases.

b. That denial does not mean the position is wrong.

c. That denied cases can be challenged in appeals and in class actions to redress mass denials.

d. That many appeals and class actions have resulted in change of positions which is common and encouraged in immigration practice.

e. That discretionary decisions are not appealable but a motion to reopen or reconsider can be submitted.

84. For an improper purpose, the defendant had ignored the rule that an attorney may not be punished for proposing good faith argument or for relying on official statement of the law contained in (a) a statute or other enactment, or (b) an administrative order or grant of permission, or (c) a judicial decision of a state or federal court, or (d) an interpretation of the statute or law relating to the offense, officially made or issued by a public servant, agency or body legally charged or empowered with the responsibility or privilege of administering, enforcing or interpreting such statute or law.

85. Upon information and belief, the defendant knew or ought to have known that where a process is vague or unclear so as to cause the defendant to only make a good faith argument, because in those cases "a person's conduct can only be based on guesswork or uncertainty" United States v. Cianciulli, 482 F. Supp. 585, 622 (E.D. Pa. 1979). If a defendant believes his act to be lawful and has a reasonable ground for his belief because the law is obscure and unascertainable, the defendant should be excused. Burns v. State, 123 Tex. Crim. 611, 611-12, 61 S.W.2d 512, 512-13 (1933). 69 N.Y.2d 382, 507 N.E.2d 1068, 515

86. Upon information and belief, the complainants were recruited to lie against the defendant. One Sookdeo Maraj, for example, lied that he paid the defendant $4500 in advance which is not true in face of clear and convincing evidence of receipts of payment showing that he paid after approval. Yet, Sookdeo Maraj was used as one of the grand jury witness.

87. On November 20, 2014, past President Barack Obama announced the same relief for parents to start within 6 months. Instead of the defendant dropping the case, they continue to harass and intimidate the plaintiff and denied the importance of the presidential announcement. This is presidential stamping of the  existing deferred action program which implementation lack transparency and inconsistencies among agencies of staff according to USCIS Ombudsman .

88. Upon information and belief, making statements to the media that are designed to arouse public indignation is a gross misconduct. In a desperate move to damage the reputation and the business of the plaintiff, the defendant had engaged in extensive press release and circulation of the arrest and indictment of the plaintiff. Upon information and belief, the indictment was mailed to immigrants, attorneys and so on and remained top search on google.

89. Upon information and belief, on January 7, a new letter was addressed to the plaintiff clients attaching the press release and asking them to call or visit the office. When this was brought to the attention of the judge, the prosecutor denied in court that there is no wholesaling breach of attorney-client privilege even though there was.

90. The circulated press release and  advertisement for witnesses stated: "The immigrants in this case wanted to do the right thing by hiring a licensed attorney to guide them and their families through various legal processes," said District Attorney Vance. "Instead of providing them with honest representation and advice, the defendant is accused of taking advantage of their trust and stole from them. I encourage victims of immigration fraud to contact my Office's Immigrant Affairs Hotline at 212-335-3600."

91. Upon information and believe, the witnesses are being intimidated, misinformed, induced and evidence were being fabricated.

92. Upon information and belief, ethical rules encourage attorneys to challenge problems and work zealously within the bounds of the law and pursue propositions which are in form

with practical and common sense in order to influence change in extant laws, rules and regulations, that is, proposing Good Faith Argument. The lawyer's conduct is within the bounds of the law and therefore permissible, if the position taken is supported by law or is supportable by a good faith argument for an extension, modification or reversal of the law.

93. Upon information and belief, according to the ethic rules, a lawyer may serve simultaneously as both advocate and adviser but the two roles are essentially different. In asserting a position on behalf of the client, an advocate for the most part deals with past conduct and must take the facts as they are. By contrast, a lawyer serving as adviser primarily assists the client in determining the course of future conduct and relationship. The advocate may urge any permissible construction of the law favorable to the client, without regard to the lawyer's professional opinion as to the likelihood that the construction will ultimately prevail.

94. Upon information and belief, a lawyer is entitled to his fees even if the case is denied. Though, the plaintiff chose to get paid on approval.

95. Upon information and belief, according to ethics, the use of lawful intelligence in getting work done belongs to the attorney of which they are entitled to make decision to act in the best interest of clients. In certain areas of legal representations not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions. Ethical rules encourage lawyers to argue through government bureaucracy. Putting forward legal opinions and good faith arguments are not crime.

**96.** Upon information and belief, there was a breach of Civil Rights Act 18 USC 241, 242 against the plaintiff. 18 USC 242 stated: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both…." 18 USC 241 stated: "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or…"

97. Upon information and belief, General authority to grant administrative relief including work permits exists under Immigration and Nationality Act (INA) Section 103(a), 8 U.S.C. Section 1103(a) which grants the Secretary of Homeland Security the authority to enforce the Immigration Laws. The Supreme Court has made clear that decisions to initiate or terminate enforcement proceedings fall squarely within the Authority of the Executive. Se, e.g., Heckler v. Chaney, 470 U.S. 821, 831 (1985).

98. Upon information and belief, the defendant approved the use of perjured testimony to obtain search warrant in the prosecution of the case.

99. Upon information and believe, the defendant engaged in unlawful evidence gathering and wiretapping of the plaintiff to achieve an improper purpose.

100. Upon information and belief, the defendant engaged in gross breach of attorney-client privilege by aggressively calling the plaintiff clients from seized files and pressuring them to sign waiver of attorney-client privilege when it was not the intention of some of the clients to do so. This notice was brought to the attention of the Judge on Thursday August 28, 2014; the defendant surprisingly denied the fact.

101. Constitutionally an accused person is presumed innocent until the prosecution case is proved beyond reasonable doubt. The defendant refused to release seized files and computers for months which is an act designed to frustrate the business of the plaintiff. An Order to Show Cause to enforce release of seized files was filed and heard on August 28, 2014 and the judge advised thus: "What I would like you to do is to work together to allow Mr. Salis to have the documents that he needs to continue his legitimate practice, without impeding or impairing your investigation"

102. Because of 10 "complainants", the defendant obtained search warrant through perjured testimony to seize all files and computers of the defendant thereby preventing meeting of deadlines and attendance to queries which is common in immigration practice. In the defendant quoted statement from the transcript, the defendant said: "And my understanding is that the immigration Judges would definitely understand if he doesn't have this file, and would give him an adjournment, just as similar to criminal court". This is the defendant quoted response to clients missing deadlines and facing deportation. The defendant also want the plaintiff to travel to where the files are stored which is 10 miles away for each and every client that needed attention.

103. Throughout the prosecution of the case, the defendant pretended to be protecting the immigrants clients when the facts showed that the defendant did not care whether these immigrants were damaged or not as the main purpose of the defendant in the prosecution was improper designed to seek other than justice motive basically to destroy the plaintiff business and seize his retirement property among others.

104. Upon information and belief, the defendant encouraged holding on to files that does not relate to the indictment and holding on to exculpatory evidence constituting breach of confidentiality and ethical rule of fairness to opposing party.

105. Upon information and believe, the defendant took several moves to frustrate the contractual relationship between the plaintiff and his clients thereby impairing on the obligation of contract.

106. Part of the seized files and documents in plaintiff law office include clients money orders entrusted to the plaintiff to pay government fees. The money orders were seized for months frustrating the work of the clients and of the plaintiff.

107.   The files and computers was seized for months without release. The judge has asked that the 2 computers be imaged and released within two weeks from August 28, 2014 but this was not released until about 4 months with the key data intentionally damaged.

108.   At the arraignment of the plaintiff on July 24, 2014, the defendant demanded excessive bail of $1 million contrary to the plaintiff's rights under the 8th amendment of the US Constitution that prohibits excessive bail and cruel and inhuman treatment. The judge ruled $250,000.00 bail with a bail source hearing.

109.   Getting third parties for large bail ($250, 000) with source hearing presented a great challenge because of privacy concerns of the third parties and attempted frustrating the defense of the case. Eventually when third party friends (4 of them) came up with the bail, they were drilled by the defendant who denied consent to the bail. A motion was presented to another judge (different from the arraignment judge) for hearing who later approved the bail after 21 days of incarceration of the plaintiff. Upon information and belief, the intent of the defendant was to achieve an improper purpose and maliciously keep the defendant in jail to perpetuate "the other than justice motive".

110.   At the arraignment hearing on July 24, 2014, the defendant placed unnecessary emphasis on the plaintiff national origin suggestive of discriminatory intent in violation of the Civil Rights Act.

111.   On July 24, 2014, during the arraignment hearing, the judge asked in quote "What is the top charge in the indictment" the defendant replied in quote "It is Grand Larceny in the Third Degree, I believe" then the Judge retorted in quote "Class B Felony?" then the defendant replied "That is Right, Judge". The defendant knew the plaintiff was charged for D and E felony. The top charge of the indictment is a D felony but the defendant misled the judge at the arraignment that it was a B felony to achieve an improper motive of getting large bail condition to frustrate the plaintiff release among others.

112.   Upon information and believe, the defendant kept exculpatory evidence from the plaintiff to achieve an improper purpose. When asked about the obligation to turn over Brady material during August 28, 2014 hearing. The defendant replied in quote: "We are quite aware that we have that obligation, Judge, and we don't believe we are in possession of any Brady material". Upon information and believe, the defendant had exculpatory evidence which were not released to the plaintiff.

113.   The defendant on or about January 17, 2014 had secretly applied (with non-disclosure order) to the Appellate Division of the Supreme Court First Judicial Department to unseal the Defendant Records with the Departmental Disciplinary Committee that oversees the conduct of attorneys.

114.   Upon information and belief, the plaintiff and his law firm were secretly recorded several times, tapes of which were in possession of the defendant but only two were released.

115.   Upon information and believe, the defendant made several calls to some of the plaintiff clients thereby breaching the attorney-client privilege and confidentiality rules.

116.   The defendant knew or ought to have known that there is a complete absence of intent to defraud by the plaintiff but deliberately trying to impute one in order to achieve an improper purpose.

117. During the trial of the plaintiff, the defendant called several witnesses to testify against the plaintiff. Some of the defendant's witnesses falsely testified under oath while some attempted to hide favorable facts to the plaintiff in a desperate attempt to convict the plaintiff by all means.

118. Upon information and belief, the witnesses were coached by the defendant before testifying.

119. Upon information and belief, the proceedings at the grand jury indicting the plaintiff were manipulated by the defendant in order to indict the plaintiff by all means.

120. Upon information and belief, the indictment was obtained through use of false testimony or other wrongful conduct before the grand jury.

121. Upon information and belief, the indictment and prosecution of the plaintiff was tainted by fraud, perjury, misrepresentation and or withholding of evidence.

122. Upon information and belief, the defendant caused and or approve false and untrue information to be used in an affidavit to secure warrant of arrest of the plaintiff.

123. As a result of the indictment and warrant which have untrue foundation, the plaintiff was seized by the defendant, detained and confined in jail for about 14 days

124. Upon information and belief, during the prosecution of the case, intervening facts exonerating the plaintiff became known to the defendant after the plaintiff's arrest and the defendant nevertheless continues with the criminal prosecution knowing of plaintiff innocence.

125. In the prosecution of the plaintiff, the defendant displayed malice and a gross and reckless disregard for the plaintiffs rights under the Constitutions and laws of the United States and of the state of New York and wholly without probable cause.

126. In the prosecution of the plaintiff, the defendant's conduct amount to extreme and outrageous behavior.

127. In the prosecution of the plaintiff, the defendant's conduct revealed purposefully reckless disregard to the emotional distress such action would cause the plaintiff.

128. In the prosecution of the case, the defendant showed grossly negligent conduct toward the plaintiff.

129. Upon information and belief, the defendant commenced the criminal proceeding with wrong or improper motive rather than a desire to seek justice.

130. In the prosecution of the case, there is display of gross and reckless disregard for the plaintiffs rights and a display of grossly negligent conduct

131. Upon information and belief, the plaintiff was put under excessive surveillance by the defendant in breach of the regulations and in breach of the plaintiff's right to reasonable privacy.

132. The defendant released a press release with a phrase "stole from them". This press release was published by major newspapers and broadcasted on TV and radio stations and circulated to clients of the plaintiff to achieve an improper purpose.

133.   At the detention center in Rikers Island, the plaintiff was chained arm and legs as a special criminal when detainees were being driven for chest x-ray.

134.   Upon information and belief, the defendant failed to release all the notes (audio, videos, written and others) to the plaintiff of Interviews had with the bail guarantors and some of the defendant complainants and other witnesses

135.   Upon information and belief, the defendant acts and omission produced hate from some attorneys toward the plaintiff; one Goldberg based in the Bronx New York wrote an agent (believed to be the attorney friend) in New Jersey bypassing New York agent demanding that the plaintiff should be wired, another attorney Espinoza went on spanish tv about the same day of the indictment, another one Figeroux advertised that Salis had been indicted, despite constitutional right to innocence, and that all Salis clients should come to his law firm while another asked one of the defendant complainant, sookdeo maraj, to lie that he paid me 4500 at the inception of his case.

136.   After extensive trial that lasted for about 3 weeks, the plaintiff was discharged and acquitted on all charges.

137.   Upon information and belief, after the trial, the defendant indirectly is engaging in retaliatory action.

138.   The Plaintiff is seeking relief in this court of hope and dignity and this case is brought to examine any of the following among others in the prosecution of the plaintiff by the defendant:

   a.   Whether the plaintiff was indicted with more offenses than is warranted
   b.   Whether there was withholding or delaying the release of exculpatory evidence by the defendant
   c.   Whether the defendant knew or ought to have known of the innocence of the plaintiff but continue to prosecute the plaintiff.
   d.   Whether there was any deliberately mishandling, mistreating, or destroying of evidence
   e.   Whether the defendant allowed witnesses they know or should know are not truthful to testify
   f.   Whether certain witnesses were pressured or coached to testify or not to testify by the defendant
   g.   Whether there was a reliance on fraudulent forensic experts or fraudulent analysis by the defendant
   h.   Whether during plea negotiations, there was overstating the strength of the evidence by the defendant
   i.   Whether statements were made by the defendant to the media that are designed to arouse public indignation of the plaintiff
   j.   Whether the defendant made improper or misleading statements to the jury

k. Whether the defendant violated or attempted to violate the constitutional and or civil rights of the plaintiff

l. Whether there was an attempt to denigrate the plaintiff, the defense or the defense counsel by the defendant.

m. Whether there was an attempt to argue matters not supported by evidence

n. Whether there was an attempt to equate Not Guilty verdict to a guilty verdict by pursuing a retaliatory move.

o. Whether there were arguments by the defendant which urged the jury to decide case based on prosecutor's own veracity, integrity, honesty, reputation and knowledge of facts

p. Whether there was a violation of due process by the defendant in the prosecution of the plaintiff.

139. As a result of the foregoing, the defendant prosecuted the plaintiff for an improper purpose other than to seek justice, acted with malice, committed gross misconduct thereby leading to great humiliation and embarrassment to the plaintiff making the plaintiff incur substantial cost in the defense of the case.

## SECOND CAUSE OF ACTION- CIVIL AND BILL OF RIGHTS VIOLATIONS

Plaintiff repeats paragraphs 1 through 138

140. By reason of the foregoing, the plaintiff Civil Rights Violations under the US and the New York Constitutions were violated by the defendant, the plaintiff suffered a deprivation of his life, liberty, due process and pursuit of happiness, discriminated against, suffered emotional distress and mental anguish, further subjected to humiliation, scorn and ridicule by those with knowledge of his detention and incarceration, has suffered a loss of reputation in the community in which he lives and works, and other injuries including expenditure of money for counsel fees in connection with the prosecution.

## THIRD CAUSE OF ACTION- CAUSING UNLAWFUL ARREST AND SEARCH

Plaintiff repeats paragraphs 1 through 138

141. As a result of the foregoing,  the defendant manipulated the grand jury to obtain indictment and use untrue statements to obtain search and seizure warrant of the plaintiff thereby causing unlawful arrest of the plaintiff. The unlawful arrest caused the plaintiff embarrassment and humiliation,  scorn and serious mental anguish making the plaintiff incur substantial cost to defend the case.

## FOURTH CAUSE OF ACTION- DEFAMATION OF CHARACTER

Plaintiff repeats paragraphs 1 through 138

142.   As a result of the foregoing, the plaintiff was defamed in his reputation and good name, substantially embarrassed and suffered mental and bodily distress including expending substantial costs in the defence of the case.

### FIFTH CAUSE OF ACTION- CAUSING EMOTIONAL DISTRESS
Plaintiff repeats paragraphs 1 through 138

143.   As a result of the defendant's foregoing,  the plaintiff suffered mental anguish, emotional distress, defamed in name and reputation and incur substantial cost in the defense of the case.

### SIXTH CAUSE OF ACTION- OFFICIAL MISCONDUCT DESIGN TO DAMAGE
Plaintiff repeats paragraphs 1 through 138

144.   As a result of the foregoing, the defendant committed official misconduct leading plaintiff to be defamed, suffered mental anguish and incurred substantial cost in the defense of the case.

### SEVENTH CAUSE OF ACTION- ACTING BEYOND AUTHORITY TO DAMAGE
Plaintiff repeats paragraphs 1 through 138

145.   As a result of the defendant's conduct  acting beyond laid down authority, the plaintiff suffered emotional distress, embarrassment and humiliation. By reason of the arrest and malicious prosecution of the plaintiff by the defendant, the plaintiff was subjected to humiliation, indignity and great expense.

### EIGHTH CAUSE OF ACTION- ABUSE OF PROCESS TO DAMAGE
Plaintiff repeats paragraphs 1 through 138

146.   As a result of the foregoing, the defendant displayed conduct with the intention to obtain results for which the process was not designed thereby committing abuse of process making the plaintiff to suffer damages in reputation and mental anguish as well as incurred substantial cost in the defense of the case.

147.   By reason of the acts and omissions of the defendant in each and every cause of action stated above, the plaintiff is entitled to recover general, punitive and compensatory damages.

WHEREFORE, the plaintiff demands judgment against the defendant with the costs and disbursements of this action.

May 27, 2017

_____
Owolabi Salis (Pro Se)
1179 Eastern Parkway
Brooklyn, Ny 11213
9174030566


STATE OF NEW YORK,
COUNTY OF KINGS ss:

I, OWOLABI SALIS, am the Plaintiff in the within action. I have read the foregoing complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
Plaintiff's Signature


Subscribed and Sworn to

before me on   May 30, 2017
_____
NOTARY PUBLIC

JAMES HANSHUMAKER
NOTARY PUBLIC, State of New York
No. 01HA4975130
Qualified in Nassau County
Commission Expires          18
KINGS Co, NY

CC TO:

City of New York,
Attn: Corporation Counsel,
100 Church St., 5 Fl.,
New York, NY 10007